UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARRY R. REASONER,

Plaintiff,

v.

CITY OF PITTSBURG, et al.,

Defendants.

Case No. 18-cv-07674-TSH

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: Dkt. No. 34, 46

## I.    INTRODUCTION

Larry Reasoner alleges the City of Pittsburg (the "City") and its employees engaged in a pattern of harassment, due process violations, unreasonable searches and seizures, and other constitutional violations related to a property he co-owns with his business partner, ultimately leading to the execution of a nuisance abatement warrant and Reasoner being taken into custody. In addition to the City, Reasoner names as Defendants Garrett Evans (Assistant City Manager), Brian Addington (Chief of Police), Lieutenant Roderick DuPont, Officer Heidi Maguire, and Community Services Specialists Myla Rivers and Karen Burns (collectively, the "City Defendants").  He also names Joe Sbranti (former City Manager) and Fernandes Auto Wrecking and Towing, Inc. (for its role in the nuisance abatement services it provides to the City).  Pending before the Court are the City Defendants' Motion to Dismiss (ECF No. 34, "City Mot.") and Sbranti's Motion to Dismiss (ECF No. 46, "Sbranti Mot.") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f).  Reasoner filed one Opposition addressing both motions (ECF No. 49) and the City Defendants and Sbranti filed a Reply (ECF No. 50).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motions for the following reasons.

## II.    BACKGROUND

### A.    The Property

Reasoner is a 35% owner of Harbor Street Investors, LLC, along with business partner, John Campagna, who owns the remaining 65%. Sec. Am. Compl. ("SAC") ¶ 19, ECF No. 23. In October 2012, Harbor Street purchased the property located at 2139 Harbor Street, Pittsburg, California 94565, APN # 088-500-010-9 (the "Property"). *Id.* ¶ 18. Reasoner began residing at the Property in October 2013. *Id.* ¶ 23.

Prior to Harbor Street's purchase of the Property, it had been used to store trucks, other automobiles, and cargo storage containers since at least 2002. *Id.* ¶ 20. The Property is in an Industrial Park District[1] and located next to a public storage facility (Security Public Storage) and other warehouses.

On July 7, 2013, Reasoner, on behalf of Harbor Street, filed Use Permit and Design Application No. 13-934 with the City's Planning Commission to store cargo containers and tractor trailer trucks on the Property, to screen the Property yard with an eight-foot fence, and to construct a modular office building and one-bedroom mobile home. *Id.* ¶ 22. On January 14, 2014, the Planning Commission approved and issued the permit. *Id.* ¶ 24.

### B.    Harassment

From January 2014 until approximately November 2017, DuPont entered the Property at least 15 times without notice to Reasoner or Campagna to inspect it. *Id.* ¶ 25. Reasoner often informed DuPont that he had no right to be on the Property without a warrant, frustrating DuPont, who in turn informed Reasoner that he was a code enforcement officer and could inspect the Property anytime without notice and without Reasoner's consent. *Id.* Reasoner and DuPont often argued about the scope of his inspections, including DuPont's inspecting the inside of Reasoner's storage cargo containers or the interior of his temporary office trailer, which led to DuPont making

---

[1] The City's Industrial Park Districts include "sites in landscaped settings for service-oriented commercial and light industrial uses with limited customer presence and turnover, including industrial office centers, research and development facilities, limited industrial activities (including production and assembly but no raw materials processing or bulk handling), limited and warehouse type retail and commercial activities, and small-scale warehousing distribution." City of Pittsburg Mun. Code § 18.54.005(B)(1).

"antigay" statements towards Reasoner, who is openly gay. *Id.* ¶ 26. Reasoner alleges that "[c]ertain female police officers of the City of Pittsburg Police Department have also informed [him] that Defendant DuPont has a 'problem' with gay people and believes that they need to be 'fixed.'" *Id.* During this same time period, Reasoner witnessed DuPont driving around the exterior of the Property on several occasions taking photographs of him and the Property. *Id.* ¶ 27. Reasoner alleges DuPont's purpose for engaging in this conduct was to harass and intimidate him. *Id.*

Beginning in approximately 2017, the City began to increasingly cite Reasoner for alleged violations at the Property. *Id.* ¶ 28. On May 25, 2017, Romeo F. Herrera, Chief Building Official for the City, issued a Notice to Comply, requesting Reasoner: (1) cease and desist the use of a recreational trailer; (2) remove electrical cords that were allegedly serving as a permanent source of electricity; (3) remove a light placed above a meter electrical pole; (4) remove an allegedly unpermitted plumbing system; (5) remove a commercial sink; and (6) remove an allegedly unpermitted water heating system. *Id.* ¶ 29. Shortly after receiving the May 25 notice, Reasoner and Campagna cured many of the alleged defects, including removing the plumbing system, removing the commercial sink, removing the hot water heating system, and removing the electrical cords. *Id.* ¶ 34. Campagna communicated these activities to Fritz McKinley, then Planning Manager for the City, in numerous emails during June 2017 and sent photographic evidence of the remedial actions. *Id.* Defendants Sbranti and Evans were copied on this email correspondence. *Id.* Despite these changes, Reasoner alleges the City persisted in its campaign of harassment against him. *Id.* ¶ 35.

On June 1, 2017, without any notice to Reasoner, the City submitted an order to Pacific Gas & Electric Company ("PG&E") to shut off the electricity as a way to force him off the Property. *Id.* ¶ 30. To date, the City has not ordered that the electricity at the Property be restored. *Id.* ¶ 33.

On October 2, 2017, DuPont issued Reasoner a $400 Administrative Citation for alleged violations of Pittsburg Municipal Code ("PMC") §§ 18.82.050 (Property Maintenance), 18.54.010 (Land Use Regulations – Storage of Boats / Recreational Vehicles / Trailers), 18.54.010 (Land

Use Regulations – Storage of Automobiles), and 15.08.010 (Living Quarters).[2] SAC ¶ 36. Subsequently, he issued Reasoner additional Administrative Citations on October 16, 2017 ($800), November 6, 2017 ($2,000), November 17, 2017 ($4,000), and November 29, 2017 ($4,000), all for the same violations alleged in the October 2 citation. *Id.* ¶ 37. The citations only provided cursory references to sections of the PMC, with no explanation of which parts of Reasoner's property constituted a nuisance or why. *Id.* ¶ 39. DuPont was aware that Reasoner did not have the financial means to pay for these citations and that he suffered from physical ailments and was unable to fix the alleged violations as quickly as DuPont and other City employees demanded. *Id.* ¶ 40.

From approximately early June 2017 to early November 2017, Reasoner met with Defendants Sbranti and Evans to complain about DuPont's conduct, informing them that DuPont was constantly harassing him and taking photos of him and the Property for no apparent reason. *Id.* ¶ 41. Reasoner also addressed his concerns regarding the notice to comply, the various administrative citations, and the electricity being shut off at the Property, but Sbranti and Evans did nothing to investigate or address his complaints. *Id.* On November 29, 2017, Reasoner met with Chief Addington to discuss the citations and DuPont's conduct. *Id.* ¶ 42. He was joined by his friend, William Lee. *Id.* In response, Chief Addington "angrily threatened Mr. Reasoner that he better address the violations alleged in the Administrative Citations or Defendant Addington would have the City remove everything from the Property." *Id.* ¶¶ 42-43. After Reasoner left Chief Addington's office, Lee stayed in the office while Reasoner waited just outside. *Id.* ¶ 44. Reasoner overheard Chief Addington yell at Lee, "I don't understand why you want to help this guy!" *Id.* Moments later, after Lee left Chief Addington's office but before they were able to leave the building, Chief Addington arrested Lee for allegedly driving on a suspended license. *Id.* ¶ 45. The City kept Lee in a holding cell for ten days. *Id.*

**C.      Application and Execution of Nuisance Abatement Warrant**

On December 13, 2017, DuPont applied to the Contra Costa Superior Court of California

---

[2] The municipal ordinances can be found at https://www.codepublishing.com/CA/Pittsburg.

4

for a nuisance abatement warrant pursuant to California Code of Civil Procedure section 1822.50, et seq., to abate an alleged nuisance at the Property. *Id.* ¶¶ 46-47. DuPont submitted his affidavit in support. *Id.*; Ex. A (Affidavit of Roderick DuPont in Support of Application for Nuisance Abatement Warrant). The court issued the warrant on December 13, 2017. *Id.* ¶ 48 & Ex. B (Nuisance Abatement Warrant). The warrant authorized the removal of "the living quarters, weeds, garbage, construction debris, metal, automobiles, trucks, vehicles, trailers, recreational vehicles, boats, buses, construction equipment, storage containers, and any other misc. items on the property which pose a risk of harm to the public and/or individuals on adjacent properties, and constitute a public nuisance." *Id.*, Ex. B.

On December 18, 2017, at approximately 5:47 p.m., Reasoner witnessed an individual post the warrant below the mailbox on the Property. *Id.* ¶ 49. DuPont's affidavit was not attached to the warrant and was never posted on the Property, and Reasoner never saw the affidavit until approximately January 25, 2018, when he spoke with a filing clerk at the Contra Costa Superior Court in Pittsburg to inquire whether anyone had filed a warrant or affidavit. *Id.*

Less than 24-hours after posting the Warrant, on December 19, 2017 at approximately 7:30 a.m., DuPont, along with Defendants Maguire, Rivers, Burns, and Fernandes Towing arrived at the Property to begin abating the alleged nuisance. *Id.* ¶ 50. Upon arriving at the Property, DuPont immediately directed police officers to seize Reasoner and to take him into the custody of the Contra Costa Regional Medical Center for a 72-hour hold pursuant to California Welfare and Institutions Code section 5150 (governing involuntary holds at psychiatric facilities). *Id.* ¶ 52. At DuPont's direction, police officers placed Reasoner in an ambulance to take him into the custody of the medical center. *Id.* ¶ 53. Once Reasoner was in the police car, DuPont approached him and threatened, "I'm going to teach you a lesson you'll never forget." *Id.* ¶ 54. DuPont's alleged basis for directing police officers to take Reasoner into the custody of the medical center was that he was suicidal, but Reasoner alleges the real reason was to prevent him from witnessing or complaining about the events that followed, "including the City's unlawful removal, destruction, and/or disposition of almost all items of Mr. Reasoner's personal property." *Id.* ¶ 55.

Once Reasoner had been removed, Defendants began removing his property. *Id.* ¶ 56.

Fernandes Towing acted as the City's agent to abate the alleged nuisance, including removing all vehicles, Reasoner's fifth wheel trailer, motor home, and three of his six storage cargo trailers. *Id.* ¶ 51. Reasoner alleges DuPont directed Fernandes Towing to destroy his vehicles, and it proceeded to demolish and crush them in a wrecking yard. *Id.* ¶¶ 86-87. Reasoner also alleges DuPont directed officers and employees of Fernandes Towing to remove numerous items of Reasoner's personal property that were outside of the warrant's scope. *Id.* ¶¶ 57-58. Defendants also unlocked and opened Reasoner's storage cargo containers, which contained his personal property. *Id.* ¶ 60. Fernandes Towing removed three of the six storage containers to their towing yard, and the remaining containers remained on the Property with the locks cut open. *Id.* ¶ 61. Strangers proceeded to take Reasoner's property from these containers without any of the Defendants stopping them. *Id.*

Later that day, DuPont signed and dated a return warrant declaring under penalty of perjury that "all violations noted in the Warrant . . . were abated and corrected in the manner authorized in the warrant on December 19, 2017." *Id.* ¶ 63 & Ex. C (Return Warrant). In fact, abatement efforts continued until at least December 21, 2017, two days after DuPont declared that the abatement was complete. *Id.* ¶ 63. The City placed a cost of abatement lien on the Property totaling approximately $33,731.64. *Id.* ¶ 64.

**D. Post-Abatement**

After the City completed its removal of Reasoner's property, he did not receive notice as to how or where he could recover the property that had been removed, and the City failed to inform him that his property would be destroyed and/or disposed of if he failed to claim it. *Id.* ¶ 88.

On January 16, 2018, Reasoner attended a Pittsburg City Council meeting to address his concerns regarding the abatement. *Id.* ¶ 95. The City Council meeting minutes state that, "Larry Reasoner, Pittsburg, stated that his property was abated by an illegal warrant and presented documents to the Council to that effect." *Id.* ¶ 96.

Reasoner attended another City Council meeting on March 19, 2018. *Id.* ¶ 97. The City Council meeting minutes state that, "Larry Reasoner, Pittsburg, asked for copies of the abatement filed on January 5." *Id.* ¶ 98. However, Reasoner also raised several other concerns during the

City Council meeting, including that: (1) Fernandes Towing refused to return any of his property, even after he offered to pay the storage fees for his property; (2) he had not received lien sales for the vehicles the City and Fernandes Towing removed from the Property; and (3) Defendant Addington stated he would "fix" the issues with the illegal abatement. *Id.* Reasoner alleges that during the March 19 meeting, then Mayor Dwaine Longmire assured him that someone would contact him regarding the concerns he raised during the meeting, yet no one ever did. *Id.* ¶¶ 100-01. After he left the City Council meeting, Reasoner saw Chief Addington speaking with three other police officers in the hallway outside the meeting room. *Id.* ¶ 102. When Reasoner entered the elevator to leave the building, the three officers entered the elevator with him, where one officer proceeded to grab Reasoner by his upper arms, take a stack of papers out of his hands, and tell Reasoner that they needed to see him "downstairs." *Id.* ¶¶ 103-04. Without arresting him, the officers proceeded to fingerprint Reasoner and then place him in a holding cell while they photocopied the paperwork he had brought to the City Council meeting. *Id.* ¶ 105. The officers then released Reasoner without charging him with any crime. *Id.*

Reasoner alleges City employees continue to harass him, including officers following his vehicle, issuing monetary fines for "miscellaneous debris throughout property," issuing parking tickets to his father and sister when they were parked outside his residence even though other cars parked in the same way did not have tickets, and that the City Attorney showed up at his private residence. *Id.* ¶¶ 107-11.

**E.      Procedural Background**

Reasoner filed his original complaint on December 21, 2018 (ECF No. 1), as well as an application to proceed in forma pauperis (ECF No. 2). His complaint named 21 defendants. On January 7, 2019, the Court granted Reasoner's in forma pauperis application but found his complaint failed to state a claim on which relief may be granted and ordered him to file an amended complaint by January 28, 2019. ECF No. 6.

After Reasoner filed a motion to appoint counsel on January 14, 2019, the Court appointed volunteer counsel through the Federal Pro Bono Project and granted several extensions of time to file an amended complaint. ECF Nos. 8, 10, 12, 15, 18. Reasoner filed a First Amended

Complaint on April 17, 2019 (ECF No. 19) and the operative Second Amended Complaint on April 22, 2019.

In his SAC, Reasoner brings five causes of action: (1) a claim under 42 U.S.C. § 1983 for violation of the right to Due Process under the Fourteenth Amendment as to the City, Sbranti in his individual and official capacity, Evans in his individual and official capacity, Addington in his individual and official capacity, DuPont in his individual and official capacity, and Fernandes Auto Wrecking and Towing, Inc.; (2) a § 1983 claim for violation of the right to be free from unreasonable searches and seizures under the Fourth Amendment as to all named defendants; (3) a § 1983 claim for violation of the right to equal protection under the Fourteenth Amendment as to the City, Sbranti in his individual and official capacity, Evans in his individual and official capacity, Addington in his individual and official capacity, and DuPont in his individual and official capacity; (4) a § 1983 claim for retaliation in violation of the First Amendment as to the City, Sbranti in his individual and official capacity, Evans in his individual and official capacity, and Addington in his individual and official capacity; and (5) a negligence claim against Fernandes Towing. SAC ¶¶ 116-213. In his Prayer for Relief, Reasoner seeks compensatory and consequential damages, punitive damages, an injunction against the City to prohibit its harassment and to mandate the City release the cost of abatement lien on the Property, and attorneys' fees and costs. *Id.* at 36-37.

On May 31, 2019, the City Defendants filed their motion seeking to dismiss or strike Reasoner's claims or in the alternative for a more definite statement. Sbranti filed his motion on June 14, 2019, also seeking to dismiss or strike Reasoner's claims against him or in the alternative for a more definite statement. Defendant Fernandes Towing filed an Answer and is not a part of these motions. ECF No. 42.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Accordingly, "[i]t

8

1    is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing

2    the contrary rests upon the party asserting jurisdiction." *Id.*; *Chandler v. State Farm Mut. Auto.*

3    *Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Federal Rule of Civil Procedure 12(b)(1)

4    authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. "On a

5    motion to dismiss for lack of standing, a district court must accept as true all material allegations

6    in the complaint, and must construe the complaint in the nonmovant's favor." *Chandler*, 598 F.3d

7    at 1121 (citing *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002)). "The Court

8    may not speculate as to the plausibility of the plaintiff's allegations." *Id.* (citing *Bernhardt*, 279

9    F.3d at 867).

10   **B.      Rule 12(b)(6)**

11          A complaint must contain a "short and plain statement of the claim showing that the

12   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a Rule 12(b)(6) motion to

13   dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its

14   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean

15   probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with

17   "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555

18   (quotations and citation omitted); Fed. R. Civ. P. 8(a)(2) (A complaint must contain a "short and

19   plain statement of the claim showing that the pleader is entitled to relief."). In considering a

20   motion to dismiss, the court accepts factual allegations in the complaint as true and construes the

21   pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine*

22   *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

23   However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to

24   threadbare recitals of a cause of action's elements, supported by mere conclusory statements."

25   *Iqbal*, 556 U.S. at 678.

26          If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

27   request to amend the pleading was made, unless it determines that the pleading could not possibly

28   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**C.    Rule 12(f)**

Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

## IV.    DISCUSSION

The City Defendants and Sbranti raise several of the same arguments in their motions: (1) Reasoner lacks standing and does not state a claim for his request for injunctive relief concerning the lien and for claims involving injuries to third parties; (2) his recitation of statutes and ordinances throughout the SAC should be stricken; (3) the claims against the City should be dismissed because Reasoner cannot base his claims on vicarious liability, the SAC does not allege a basis for the conclusion that any of the named defendants were policy makers, any claim he alleges for lack of training fails to allege facts demonstrating that the need for more or different

1    training was so obvious, and that the training itself was so inadequate that it was likely to result in

2    violation of the constitutional rights in question; (4) all claims relating to the PG&E power shutoff

3    should be dismissed because the SAC alleges that "an unidentified person at the City" made the

4    request and no reason for the shut off is identified "other than speculation of some bad motive";

5    and (5) all claims against the defendants named in their "official capacity" should be dismissed

6    because the City is already a party to this action and any allegations of the individual defendants

7    acting in their official capacity are therefore redundant.  City Mot. at 7-16; Sbranti Mot. at 7-15.

8         Sbranti also argues all claims against him should be dismissed because Reasoner fails to

9    state any claims against him.  Sbranti Mot. at 15-16.  In addition, the City Defendants argue: (1)

10   the claims against Defendants Maguire, Rivers, and Burns should be dismissed because Reasoner

11   fails to allege any claim against them; and (2) all claims against Defendant Evans should be

12   dismissed because, other than as a recipient of an email, he is not identified in any other activities

13   other than possible *Monell* claims which are not properly pled.  City Mot. at 11, 16.

14        The Court shall consider each argument in turn.

15   **A.    Standing**

16        The City Defendants and Sbranti argue Reasoner has no standing and does not state a

17   claim for injunctive relief concerning the lien on the Property and for any claims involving injuries

18   to third parties.  City Mot. at 7; Sbranti Mot. at 7.  First, they maintain Reasoner's request for

19   injunctive relief concerning the lien should be stricken because he admits he does not own the

20   Property and therefore has no standing to assert any rights concerning a lien on it.  *Id.* (both).

21        Reasoner appears to concede this point as his only argument against it is:  "Even assuming

22   that Mr. Reasoner does not have standing to seek relief setting aside a lien that, in violation of Mr.

23   Reasoner's civil rights, was placed on property that he lived on still partially owns, Defendants'

24   argument under Rule 12(f) must be dismissed as procedurally improper" because a motion to

25   strike is not the proper means by which to challenge standing.  Opp'n at 24 n.11.  However,

26   "[a]lthough [Defendants] failed to move to dismiss under Federal Rule of Civil Procedure

27   12(b)(1), federal courts are required sua sponte to examine jurisdictional issues such as standing."

28   *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (citation, quotations and

alterations omitted).

The constitutional standing doctrine "functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 191 (2000). To establish standing under Article III of the Constitution, a plaintiff must meet three requirements: (1) an "injury in fact," which is neither conjectural or hypothetical, (2) causation, such that a causal connection between the alleged injury and offensive conduct is established, and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The standing requirements are not just pleading requirements. Rather, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Nevertheless, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* A "court's obligation to take a plaintiff at its word at that stage in connection with Article III standing issues is primarily directed at the injury in fact and causation issues, not redressability." *Levine v. Vilsack*, 587 F.3d 986, 996-97 (9th Cir. 2009) (citing *Lujan*, 504 U.S. at 561).

The focus here is on the first element of standing: injury in fact. To prove that element, "the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979). The claim must be based on the plaintiff's own legal rights and interests rather than the legal rights or interests of third parties.[3] *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 15 n. 7 (2004).

There is no dispute that Harbor Street, not Reasoner, owns the Property. SAC ¶¶ 18-19.

---

[3] Although "there may be circumstances where it is necessary to grant a third party standing to assert the rights of another," the party asserting the right must show he "has a 'close' relationship with the person who possesses the right" and that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (citing *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). Reasoner makes no such showing here.

"Typically, 'individual partners may not sue for damages to the partnership or their interests in the partnership.'" *Melcher v. Fried*, 2018 WL 2411747, at *5 (S.D. Cal. May 29, 2018) (quoting *O'Flaherty v. Belgum*, 115 Cal. App. 4th 1044, 1062 (2004)); *Bekele v. Ford*, 2011 WL 4368566, at *4 (N.D. Cal. Sept. 17, 2011). Thus, although Reasoner seeks "[a]n injunction mandating Defendant City to release the cost of abatement lien on the Property," SAC at 37, he fails to show he has standing to bring such a claim. Accordingly, dismissal is appropriate under Rule 12(b)(1) and the Court **GRANTS** the motions on that ground.

As to Reasoner's allegations regarding third parties, the City Defendants and Sbranti maintain Reasoner has no standing to assert claims regarding Lee's arrest because there are no allegations suggesting he would be entitled to relief based on injury to his friend. City Mot. at 8; Sbranti Mot. at 8. As to his father's and sister's parking tickets, they argue Reasoner fails to allege facts indicating his entitlement to assert whatever claims they may have. *Id.* (both). The City Defendants and Sbranti request these allegations be stricken, or at a minimum for the Court to order Reasoner "to give a more definite statement to show his entitlement to assert these claims, to also allege that there was actionable wrongdoing, and to specify whether there was any recourse to, and the results of, any state law remedies available for any such wrongdoing." *Id.* at 9 (both).

In response, Reasoner states that none of his claims seek relief based on alleged injuries to these third parties; instead, he included these allegations "because they are relevant to the City's unequal and discriminatory harassment of Mr. Reasoner, including through mistreatment of those who he associates with." Opp'n at 23. As an example, he directs the Court's attention to his allegation that Chief Addington arrested Lee for driving on a suspended license in retaliation for advocating on behalf of Reasoner. *Id.* (citing SAC ¶ 44). He maintains such allegations are pertinent to the subject of this litigation and the Court should therefore not strike them. *Id.*

Because Reasoner concedes he is not bringing claims on behalf of third parties, Defendants' arguments regarding standing are moot. However, the Court still considers whether such allegations should be stricken as immaterial. Under Rule 12(f), immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (citation omitted).

Here, viewing Reasoner's allegations in the light most favorable to him, the Court finds he has plausibly shown that allegations regarding treatment of third parties with whom he associates are relevant to his claims that the City harassed and discriminated against him.  Further, Defendants have not demonstrated that Reasoner's allegations regarding third parties prejudice them in any way.  *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) ("Given their disfavored status, courts often require a showing of prejudice by the moving party before granting [a motion to strike].").  Finally, a matter should not be stricken from a pleading "'unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied.'"  *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 938 (N.D. Cal. 2013) (quoting *Wailua Assocs. v. Aetna Casualty and Surety Co.*, 183 F.R.D. 550, 553-54 (D. Haw. 1998)).  Thus, as motions to strike are disfavored, the Court finds it prudent to exercise its discretion and not strike these portions of Reasoner's SAC because it is not clear that they have no possible bearing upon his allegations.  Accordingly, the Court **DENIES** the City Defendants' and Sbranti's motions to strike portions of Reasoner's SAC related to third parties.

**B.      Recitations of Statutes and Ordinances**

The City Defendants and Sbranti next request the Court strike portions of Reasoner's complaint in which he recites statutes and ordinances – specifically, Cal. Code Civ. Proc. § 1822.50, *et seq.*, Cal. Veh. Code § 22852, *et seq.*, and PMC section 8.12, *et seq.*  City Mot. at 9, Sbranti Mot. at 9.  They argue "[t]hese recitations of statute are particularly inappropriate here as Plaintiff is making no state law claim based upon such statutes.  These statutes do not control this Court's determination concerning the claims against these Defendants, all of which are claims of violation of civil rights[.]"  *Id.* (both).  In response, Reasoner concedes he is not making any state law claims but argues "a discussion of these laws is relevant to this litigation and provides important context for [his] claims."  Opp'n at 19.  Thus, the Court must only determine whether to exercise its discretion and strike these allegations as immaterial.

As with his allegations regarding third parties, the Court finds Defendants have not demonstrated that Reasoner's allegations are entirely unrelated to the claims or that these

United States District Court
Northern District of California

14

allegations prejudice them.  Further, it is not clear that these allegations have no possible bearing upon his allegations; thus, "if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied.'"  *Holmes*, 966 F. Supp. 2d at 938 (quoting *Wailua Assocs.*, 183 F.R.D. at 553-54).  Accordingly, the Court finds it prudent to exercise its discretion and not strike these portions of Reasoner's SAC at this time.  The City Defendants' and Sbranti's motions to strike portions of Reasoner's SAC in which he recites statutes and ordinances are therefore **DENIED**.

### C.      Claims Against Maguire, Rivers and Burns

The City Defendants seek dismissal of the claims against Maguire, Rivers and Burns.  City Mot. at 11.  Reasoner identifies Maguire as a police officer and Rivers and Burns as Community Services Specialists, alleges that each was present at the execution of the search warrant and followed Lt. DuPont's directions on what items to seize, and that their activities went beyond the authority of the warrant.  SAC ¶¶ 13-15, 50, 57, 62.  The City argues these claims must be dismissed because there is no allegation these three individuals were involved in obtaining the warrant or that they ever read the warrant, and an officer's mere presence at a search or seizure, even in the instance of an invalid warrant, does not constitute a Constitutional violation.  City Mot. at 11.  The City further argues there are numerous allegations throughout the SAC against "Defendants" but not identifying any of the named Defendants in particular, and it is therefore "impossible to determine whether there are other specific allegations regarding these Defendants, and at a minimum, the complaint is insufficiently pled for these Defendants to answer the claims." *Id.*[4]

In response, Reasoner argues the Court should not dismiss these claims because the SAC alleges Maguire, Rivers and Burns violated his Fourth Amendment rights by:

---

[4] Reasoner asserts that Defendants "appear to concede" that they are not protected by qualified immunity.  Opp'n at 16 n.7.  However, Defendants do not raise the issue of qualified immunity in their motions and raise it only in response to his opposition.  Reply at 5 ("While the complaint may hint at the possibility of liability, it simply fails to actually assert facts necessary to establish liability in the face of the apparent immunity these defendants have to this warrant-based claim of illegal seizure.").  Therefore, the Court declines to address any such argument that could have been made.

15

(1) seizing items of Mr. Reasoner's property that were clearly outside the scope of the Warrant in bad faith and without a reasonable belief that probable cause existed for seizing the items of property; (2) seizing items of Mr. Reasoner's property in bad faith and without probable cause pursuant to an invalid warrant that did not satisfy the Fourth Amendment's particularity requirements – Defendants further unreasonably relied on the terms of the Warrant in seizing the property; and (3) seizing items of Mr. Reasoner's property for unlawful use, destruction, and/or disposition.

Opp'n at 16 (citing SAC ¶¶ 57-58, 79, 149).

The Court agrees these individual defendants should not be dismissed. The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. The Supreme Court "has repeatedly held that searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (internal citations, quotations and alterations omitted). Thus, assuming Reasoner's factual allegations to be true and construing all inferences from them in his favor, Reasoner has stated a claim for violations of his Fourth Amendment rights because he alleges Defendants acted outside the scope of the warrant.

However, the Court agrees that Reasoner's allegations as to these Defendants are unclear because his Fourth Amendment claim (as well as large portions of his SAC) refer generally to "Defendants" without identifying any of the named Defendants in particular. Therefore, in order to comply with Rule 8's pleading requirement, Reasoner must amend his complaint to explain why each named Defendant is being sued by making specific factual allegations that connect each Defendant with the alleged wrongdoing, and specifically identifying the claims asserted against each Defendant. Allegations that "Defendants" violated his rights will not suffice. Accordingly, the Court **DENIES** the City Defendants' motion to dismiss the claims against Maguire, Rivers and Burns outright, but **GRANTS** the motion to extent Reasoner refers to "Defendants" without making specific factual allegations for each named Defendant.

**D.     *Monell* Claims**

Throughout his SAC, Reasoner includes allegations that the City is liable for violation of his constitutional rights based on a policy or custom. *See, e.g.,* SAC ¶¶ 11, 46, 75, 101, 106. The

City Defendants and Sbranti move to strike Reasoner's *Monell* claims for failure to state a claim because his SAC is "rife with summary conclusions" and refers vaguely to "Defendants." City Mot. at 11; Sbranti Mot. at 11.

A municipality may be liable under Section 1983 when the enforcement of a municipal policy or custom was the moving force behind the violation of a constitutionally protected right. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Further, "[i]t is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury." *Id.* at 1076. "A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to [his] constitutional rights.'" *Id.* (quoting *City of Canton*, 489 U.S. at 392). The deliberate indifference standard is satisfied where a plaintiff alleges facts available to the municipality's policymakers that "put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Id.*

Here, the Court finds Reasoner's SAC plausibly alleges that Addington is a final policymaker. Policymaking is defined as "a deliberate choice to follow a course of action . . . from among various alternatives." *Pembaur*, 475 U.S. at 480. Final policymakers are municipal officers "whose acts or edicts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694; *Harper v. City of L.A.*, 533 F.3d 1010, 1025 (9th Cir. 2008) (police chief is final policymaker for City of Los Angeles, rendering City liable for police chief's "decision that deprived plaintiffs of their constitutional rights"); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) ("As to matters of police policy, the chief of police . . . may be considered the person possessing final policy-

making authority."). Reasoner's SAC sufficiently alleges that Addington, as Chief of Police, exercises control and management over the City's police department and is the final policymaker for it. SAC ¶ 11. Reasoner further alleges that Addington is a final policymaker because he administers the City's vehicle abatement code, pursuant to which Reasoner's vehicles were abated. *Id.* ¶ 75. As the Ninth Circuit has recognized, "[i]t does not matter that the final policy maker may have subjected only one person to only one unconstitutional action." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). Rather, there are "situations in which isolated constitutional violations are sufficient to establish a municipal 'policy.'" *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999); *Lyltle*, 382 F.3d at 983. For instance, "a municipality can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority." *Christie*, 176 F.3d at 1235; *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) ("[A] single decision by a municipal policymaker may be sufficient to trigger § 1983 liability under *Monell*, even though the decision is not intended to govern future situations.").

As to DuPont, the Court finds Reasoner has not plausibly alleged he is a final policymaker. Reasoner alleges DuPont has final authority in his capacity as a code enforcement officer because he "has authority to enforce all provisions of the [City of Pittsburg municipal] code," including the "authority to direct the abatement of nuisances, including the removal of weeds and rubbish." Opp'n at 10-11 (citing PMC §§ 1.16.010A, 1.24.070, 8.16.040). However, Reasoner cites no authority, and the Court is aware of none, establishing that a lieutenant is a final policymaker merely because he has authority to act on behalf of the City and enforce ordinances. Police officers are not generally considered policymakers in their day-to-day activities, despite their discretion in how to go about performing law enforcement activities. *See, e.g., Trevino*, 99 F.3d at 920 ("The police officers who shot Bahena were not 'officials with final policy-making authority' and they were not ordered to shoot by the police chief, the City Council or anyone else possessing final policy-making authority."). "If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability." *St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988).

Reasoner also alleges that constitutional violations were caused by persons with final

policymaking authority, thereby giving rise to *Monell* liability against the City. *Christie*, 176 F.3d at 1235; *Lytle*, 382 F.3d at 983. As to his first claim for violations of the right to due process, Reasoner alleges that the City violated his Fourteenth Amendment due process rights by failing to provide him with pre- and post-deprivation notices and hearings prior to seizing and destroying his personal property. SAC ¶ 128. The Supreme Court has consistently held that a state cannot deprive a person of a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment without a hearing. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) ("As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged."); *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974) ("[S]ome kind of hearing is required at some time before a person is finally deprived of" property or liberty interests); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard.' It is an opportunity which must be granted at a meaningful time and in a meaningful manner.") (citation omitted). Here, Reasoner alleges Addington did not give him the pre-deprivation notice and hearing and post-deprivation notice required under PMC section 8.12 or pursuant to any comparable procedure that would satisfy constitutional requirements. As discussed above, Chief Addington is the final policymaker in charge of giving Reasoner these notices because he administers this section of the PMC. SAC ¶ 75; PMC § 8.12.050. Thus, because Addington was a final policymaker, the City can be held liable under *Monell* for his acts. As such, Reasoner plausibly alleges *Monell* liability for the failure to provide due process.

As to his second claim for relief for violations of Reasoner's right to be free from unreasonable searches and seizures, "a seizure of personal property [is] per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." *United States v. Place*, 462 U.S. 696, 701 (1983) (citations omitted). Reasoner alleges Defendants violated his Fourth Amendment rights by, among other things, seizing items of his personal property: (1) "that were clearly outside the scope of the Warrant;" (2) "in bad faith and without probable cause pursuant to an invalid warrant that did not satisfy the Fourth Amendment's particularity

19

1    requirements;" and (3) "for unlawful use, destruction, and/or disposition." SAC ¶ 149. The Court

2    finds these allegations could plausibly allege a claim, but not as pled against "Defendants."

3    Instead, Reasoner must allege a specific City official with final policymaking authority violated

4    his Fourth Amendment rights, thus giving rise to *Monell* liability.

5            The second claim also alleges that Reasoner addressed the City Council regarding the

6    unlawful nuisance abatement, after which Addington "directed police officers to place Mr.

7    Reasoner in a holding cell, without arresting him, while they seized and photocopied his

8    paperwork without his consent or a warrant." *Id.* ¶ 106. As discussed above, Reasoner plausibly

9    alleges that Addington is a final policymaker, and his allegations that Addington violated his

10   Fourth Amendment rights are therefore viable.

11           As to the third claim for relief for violation of equal protection of the law, the Equal

12   Protection Clause provides that no state shall "deny any person within its jurisdiction the equal

13   protection of the laws." U.S. Const. Amendment XIV, § 1. The Supreme Court has noted that the

14   Equal Protection Clause "is basically a direction that all persons similarly situated should be

15   treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "It cannot be

16   disputed that discrimination on the basis of sexual orientation can state a claim under the Equal

17   Protection Clause." *O.H. v. Oakland Unified Sch. Dist.*, 2000 WL 33376299, at *10 (N.D. Cal.

18   Apr. 17, 2000) (citing *Romer v. Evans*, 517 U.S. 620, 635 (1996)). Reasoner alleges that DuPont

19   made "anti-gay" statements to him and discriminated against him on the basis of his sexual

20   orientation. SAC ¶¶ 167-70. He further alleges that DuPont's animus towards him for identifying

21   as gay was a motivating factor for DuPont's "selective and discriminatory enforcement of laws

22   against Mr. Reasoner," *id.* ¶ 168, including his "rapid fire" of administrative citations, *id.* ¶ 170.

23   However, Reasoner has not plausibly alleged that DuPont is a final policymaker and his

24   allegations based solely on DuPont's conduct do not state a viable *Monell* claim.

25           Finally, as to the fourth claim for relief for retaliation in violation of his right to freedom of

26   speech, "'[a]s a general matter the First Amendment prohibits government officials from

27   subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v.*

28   *Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

Here, Reasoner alleges that Addington directed City police officers to seize him and confine him to a holding cell while they photocopied his paperwork. SAC ¶ 190. He further alleges that "Defendant Addington's complained of conduct was executed in retaliation for Mr. Reasoner exercising his First Amendment rights at the January 18, 2018 City Council meeting." *Id.* ¶ 191. As such, the Court finds he adequately alleges a basis for *Monell* liability: Addington was plausibly a final policymaker and caused the asserted deprivation of Reasoner's constitutional rights.[5]

Moreover, Reasoner also pleads sufficient facts to support a plausible claim for *Monell* liability based on ratification of subordinate conduct by final policymakers. "A municipality also can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie*, 176 F.3d at 1238; *Praprotnik*, 485 U.S. at 127 ("If the authorized policymaker approved a subordinate's decision and the basis for it, their ratification would be chargeable because their decision is final."); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1985) ("Policy or custom may be inferred if, after [constitutional violations occurred], . . . officials took no steps to reprimand or discharge the[ir subordinates], or if they otherwise failed to admit the [subordinates'] conduct was in error."). Reasoner alleges he addressed the City Council on at least two occasions, but it did nothing to discharge, reprimand, or otherwise admit that the alleged conduct was in error. SAC ¶¶ 95-98, 101. Reasoner also alleges Addington was present at the March 19, 2019 meeting. *Id.* ¶ 99. As alleged in the SAC, "the City Council never investigated Mr. Reasoner's complaints or disciplined those who were responsible for Mr. Reasoner's injuries. The City Council made no efforts to remedy Mr. Reasoner's injuries. In so doing, the City Council tolerated, ratified, and acquiesced to the conduct of Defendants." *Id.* ¶ 101. These allegations sufficiently plead that the City Council ratified individual Defendants' conduct because they "took no steps to reprimand or discharge the[ir subordinates]," let alone "admit the

---

[5] The Supreme Court recently held that, absent a showing that there was no probable cause for an arrest, a claim that an arrest was in retaliation for speech protected by the First Amendment fails. *Nieves*, 139 S. Ct. at 1725. However, accepting all Reasoner's allegations as true and construing them in the light most favorable to him, the Court finds it is plausible that Addington's actions were without probable cause.

[subordinates'] conduct was in error." *McRorie*, 795 F.2d at 784. The City Council members are final policymakers because they are the City's legislative body and make municipal policy, as embodied in the PMC. *See Praprotnik*, 485 U.S. at 127 ("[T]he authority to make a municipal policy is necessarily the authority to make *final* policy.") (emphasis in original); *Gillette*, 979 F.2d at 1350 (holding that the city council was a final policymaker for the city); *Monell*, 436 U.S. at 694-95 (the governing body of local government can be a final policymaker). The City can therefore be held liable for the City Council's ratification of individual Defendants' violations of Reasoner's constitutional rights – specifically, his Fourteenth Amendment procedural due process rights and Fourth Amendment right to freedom from unreasonable searches and seizures.

In sum, as described above, the Court finds Reasoner's SAC states some claims for *Monell* liability that are plausible on their face. *Twombly*, 550 U.S. at 570. However, for some other of his *Monell* claims, as with his other claims, the Court finds Reasoner's allegations are somewhat unclear because he often refers generally to "Defendants" throughout the SAC without identifying any final policymaker in particular. Therefore, as to those allegations, in order to comply with Rule 8's pleading requirement, Reasoner must amend his complaint to state how enforcement of a municipal policy or custom was the moving force behind the violation of a constitutionally protected right, and name a specific final policymaker whose acts or edicts may fairly be said to represent official policy. Allegations that "Defendants" violated his rights will not suffice. Accordingly, the Court **DENIES** Defendants' motions to dismiss Reasoner's *Monell* claims against the City but **GRANTS** the motion to the extent Reasoner refers to "Defendants" without making specific factual allegations for each named defendant.

**E.      PG&E Power Shutoff**

Reasoner alleges that after issuing a Notice to Comply regarding "improper electrical equipment," the City requested that PG&E shut off the electricity at the Property and that his business partner sent emails to people at the City inquiring into the power termination. SAC ¶¶ 29-32. He further alleges the power was shut off by "Defendants" to force him off the Property, thereby treating him differently "than similarly situated people." *Id.* ¶ 171. The City Defendants and Sbranti argue any claims related to the power shutoff should be dismissed because Reasoner is

not the owner of the Property and his right to continued electrical power is unspecified. City Mot. at 15-16; Sbranti Mot. at 15. They further argue that no reason for the power shut off is alleged "other than the speculation of some bad motive" and such conclusory allegations must be disregarded. City Mot. at 16; Sbranti Mot. at 15. Finally, the City Defendants and Sbranti argue that if Reasoner seeks to bring an equal protection claim based on his allegation that other people similarly situated to him did not have their power cut off, such a claim must fail because his pleading "is a mere conclusion absent factual allegations specifying examples of the disparate treatment of others in similar situations." *Id.* (both).

In response, Reasoner argues his Equal Protection claim "hinges on two categories of facts": (1) "the City shut off the power as part of a pattern of unequal, discriminatory treatment of Mr. Reasoner designed to drive him out of town"; and (2) "Defendants discriminated against Mr. Reasoner on the basis of his sexual orientation." Opp'n at 16-17(citing SAC ¶¶ 167-71). He argues that "Defendants only challenge the first set of facts, related to the electricity shut off, not the second set of facts related to discriminating against Mr. Reasoner on the basis of his sexual orientation. As such, Defendants' argument that the entire claim should be dismissed must be denied." *Id.* at 17.

As discussed above, "[i]t cannot be disputed that discrimination on the basis of sexual orientation can state a claim under the Equal Protection Clause." *O.H.*, 2000 WL 33376299, at *10 (citing *Romer*, 517 U.S. at 635). Further, to the extent Defendants argue Reasoner cannot maintain a claim related to the shutoff because he is not the owner of the Property, the Court disagrees as his claim does not hinge on ownership – he alleges DuPont selectively enforced laws in a discriminatory manner in furtherance of his animus toward him for identifying as gay, and that the power shut off was part of a pattern of discriminatory treatment. Thus, accepting Reasoner's factual allegations as true and construing the pleadings in the light most favorable to him, the Court finds Reasoner has stated a claim which is plausible on its face. However, as with his other claims, the Court finds Reasoner's allegations are somewhat unclear because he often refers generally to "Defendants" throughout the SAC without identifying any of the named defendants in particular. Therefore, in order to comply with Rule 8's pleading requirement,

Reasoner must amend his complaint to explain why each named Defendant is being sued by making specific factual allegations that connect each Defendant with the alleged wrongdoing, and specifically identifying the claims asserted against each Defendant. Allegations that "Defendants" violated his rights will not suffice. Accordingly, the Court **DENIES** the City Defendants' and Sbranti's motions to dismiss Reasoner's allegations regarding the PG&E power shutoff but **GRANTS** the motions to extent Reasoner refers to "Defendants" without making specific factual allegations for each named Defendant.

**F.  Claims Against Defendants in Their "Official Capacity"**

Finally, the City Defendants and Sbranti argue that, although Reasoner names various Defendants in both their individual and official capacities, all claims against Defendants in their official capacity should be dismissed because the City is already a party to this action, and any claims against individual defendants in their official capacity are "completely unnecessary." City Mot. at 16-17; Sbranti Mot. at 16. Reasoner argues the Court should not dismiss individual Defendants sued in their official capacity because it is "a pleading convention that merely reinforces that the challenged deprivation by these Defendants of Mr. Reasoner's civil right was done under the color of state law" and "Defendants do not allege any prejudice as a result of being sued in both capacities." Opp'n at 18-19.

Official-capacity suits under § 1983 "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690, n.55. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165 n.14 (1985) (holding that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly" (citations omitted)). Therefore, if individuals are sued in their official capacity as municipal officials and the municipal entity itself is also being sued, the official capacity claims against the individuals are redundant and should be dismissed. *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008). Accordingly, Reasoner's claims against the individual defendants in their official capacity are **DISMISSED WITH PREJUDICE**.

24

**G.      Claims Against Evans and Sbranti**

The City Defendants seek dismissal of all claims against Assistant City Manager Evans, and Sbranti seeks dismissal of all claims against him, arguing Reasoner does not allege any facts specific to them that establish a valid cause of action.  City Mot. at 16; Sbranti Mot. at 15-16.

In response, Reasoner argues he adequately alleges these Defendants "played an important role in several of the violations at issue."  Opp'n at 17-18.  Specifically, Reasoner notes his allegations that he confronted Evans and Sbranti on several occasions regarding DuPont's alleged harassment, including concerns regarding the administrative citations, notice to comply, and power shut off.  *Id.* at 18 (citing SAC ¶ 41).  He argues these claims are sufficient to satisfy *Monell* liability because Evans and Sbranti had final policymaking authority and ratified DuPont's conduct.  *Id.*  Reasoner further argues these allegations are sufficient to establish individual liability because he "had clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments and these Defendants acted objectively unreasonably when they deprived Mr. Reasoner of these rights."  *Id.*

As City Managers, it is plausible that Evans and Sbranti had final policymaking authority as the administrative heads of the City.  *See Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1108 (9th Cir. 2018) (City Manager can have final policymaking authority if the city's charter so designates).  Thus, to the extent Reasoner seeks to bring *Monell* claims based on Evan's and Sbranti's action (or inaction), the Court finds he states a plausible claim.  However, as discussed above, he must amend his complaint because he refers to "Defendants" throughout without making his specific factual allegations for each named Defendant clear.  As to Reasoner's claims against Evans and Sbranti in their official capacity, they are redundant of his claims against the City.  Accordingly, the Court **GRANTS** the motions as to claims against Evans and Sbranti in their official capacities with leave to amend if Reasoner can state plausible claims against them in their individual capacities.

## V.      CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the City Defendants' and Sbranti's motions as follows:

1)  The Court **GRANTS** the motions as to Reasoner's claim for injunctive relief
    mandating the City release the cost of abatement lien on the Property;

2)  The Court **DENIES** the motions as to Reasoner's allegations regarding third parties;

3)  The Court **DENIES** the motions to strike portions of Reasoner's complaint in which he
    recites statutes and ordinances;

4)  The Court **DENIES** the City Defendants' motion to dismiss claims against Maguire,
    Rivers and Burns outright but **GRANTS** the motion to extent Reasoner refers to
    "Defendants" without tying specific factual allegations for each named defendant to his
    claims against them.

5)  The Court **DENIES** the motions to dismiss Reasoner's *Monell* claims against the City
    but **GRANTS** the motions to extent Reasoner refers to "Defendants" without making
    specific factual allegations tying the named defendants to his claims.

6)  The Court **DENIES** the motions to dismiss Reasoner's discrimination claim based on
    the PG&E power shutoff but **GRANTS** the motions to extent Reasoner refers to
    "Defendants" without making specific factual allegations for each named defendant.

7)  The Court **GRANTS** the motions as to Reasoner's claims against individual defendants
    in their official capacity.  Such claims are **DISMISSED WITH PREJUDICE** as
    redundant of the claims against the City.

8)  The Court **GRANTS** the motions as to Reasoner's claims against Evans and Sbranti
    with leave to amend, but only if he can state plausible claims against them in their
    individual capacities.

Reasoner shall file a third amended complaint in compliance with this Order by August 29,
2019.

   **IT IS SO ORDERED.**


Dated: August 1, 2019

_____
THOMAS S. HIXSON
United States Magistrate Judge